Filed 3/8/12

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| C.A., a Minor, etc., | ) | |
| | ) | |
| Plaintiff and Appellant, | ) | |
| | ) | S188982 |
| v. | ) | |
| | ) | Ct.App. 2/1 B217982 |
| WILLIAM S. HART UNION HIGH | ) | |
| SCHOOL DISTRICT et al., | ) | |
| | ) | Los Angeles County |
| Defendants and Respondents. | ) | Super. Ct. No. PC044428 |
| _____ | ) | |

C.A., a minor, sued his public high school guidance counselor and the school district for damages arising out of sexual harassment and abuse by the counselor. The trial court sustained the school district's demurrer, and the Court of Appeal affirmed. On review, the question presented is whether the district may be found vicariously liable for the acts of its employees (Gov. Code, § 815.2)[1]— not for the acts of the counselor, which were outside the scope of her employment (see *John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 441, 451-452), but for the negligence of supervisory or administrative personnel who allegedly knew, or should have known, of the counselor's propensities and nevertheless hired, retained and inadequately supervised her.

---

[1]    All further unspecified statutory references are to the Government Code.

1

We conclude plaintiff's theory of vicarious liability for negligent hiring, retention and supervision is a legally viable one. Ample case authority establishes that school personnel owe students under their supervision a protective duty of ordinary care, for breach of which the school district may be held vicariously liable. (See, e.g., *Dailey v. Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 747; *Leger v. Stockton Unified School Dist.* (1988) 202 Cal.App.3d 1448, 1458-1461.) If a supervisory or administrative employee of the school district is proven to have breached that duty by negligently exposing plaintiff to a foreseeable danger of molestation by his guidance counselor, resulting in his injuries, and assuming no immunity provision applies, liability falls on the school district under section 815.2.

Accordingly, we reverse the judgment of the Court of Appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

To determine whether a demurrer was properly sustained, we review the allegations of the operative complaint for facts sufficient to state a claim for relief. In doing so, we treat the demurrer as admitting all material facts properly pleaded. " 'Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126, quoting *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

Through a guardian ad litem, plaintiff C.A. alleged that while he was a student at Golden Valley High School in the William S. Hart Union High School District (the District) he was subjected to sexual harassment and abuse by Roselyn Hubbell, the head guidance counselor at his school. Plaintiff was born in July 1992, making him 14 to 15 years old at the time of the harassment and abuse, which is alleged to have begun in or around January 2007 and continued into September 2007.

2

Plaintiff was assigned to Hubbell for school counseling. Representing that she wished to help him do well at school, Hubbell began to spend many hours with plaintiff both on and off the high school premises and to drive him home from school each day. Exploiting her position of authority and trust, Hubbell engaged in sexual activities with plaintiff and required that he engage in sexual activities, including sensual embraces and massages, masturbation, oral sex and intercourse. As a result of the abuse, plaintiff suffered emotional distress, anxiety, nervousness and fear.

The suit names as defendants Hubbell, the District, and Does 1 through 100. In general terms, each defendant is alleged to be the agent and employee of the others and to have done the acts alleged within the course and scope of that agency and employment. On information and belief, plaintiff alleges "[d]efendants knew that Hubbell had engaged in unlawful sexually-related conduct with minors in the past, and/or was continuing to engage in such conduct." Defendants "knew or should have known and/or were put on notice" of Hubbell's past sexual abuse of minors and her "propensity and disposition" to engage in such abuse; consequently, they "knew or should have known that Hubbell would commit wrongful sexual acts with minors, including Plaintiff." Plaintiff bases this belief on "personnel and/or school records of Defendants [that] reflect numerous incidents of inappropriate sexual contact and conduct with minors by teachers, staff, coaches, counselors, advisors, mentors and others, including incidents involving Hubbell, both on and off the premises of such Defendants." Plaintiff's injuries were the result not only of the molestation but of the District's "employees, administrators and/or agents" failing to "properly hire, train and supervise Hubbell and . . . prevent her from harming" plaintiff.

In a cause of action for negligent supervision, plaintiff alleges (again on information and belief) that defendants, through their employees, knew or should

3

have known of Hubbell's "dangerous and exploitive propensities" and nevertheless "failed to provide reasonable supervision" over her and "failed to use reasonable care in investigating" her. Specifically, defendants neither had in place nor implemented a system or procedure for investigating and supervising personnel "to prevent pre-sexual grooming and/or sexual harassment, molestation and abuse of children." In a cause of action for negligent hiring and retention, plaintiff alleges defendants were on notice of Hubbell's molestation of students both before and during her employment by the District, but did not reasonably investigate Hubbell and failed to use reasonable care to prevent her abuse of plaintiff.

The District demurred to the complaint, arguing the negligent supervision and negligent hiring and retention causes of action failed to state a claim because of the lack of statutory authority for holding a public entity liable for negligent supervision, hiring or retention of its employees. The trial court sustained the District's demurrer to the entire complaint without leave to amend and dismissed the action as to the District. (The sole named individual defendant, Hubbell, did not join in the District's demurrer and is not a party to the present appeal.)

The Court of Appeal affirmed in a divided decision. The majority first rejected the viability of a vicarious liability theory under section 815.2, on the ground that "[a]s in *John R.* [*v. Oakland Unified School Dist.*, *supra*, 48 Cal.3d 438], in this case the alleged sexual misconduct of the guidance counselor cannot be considered within the scope of her employment." Second, the majority held no theory of direct liability for negligent hiring, supervision or retention could lie because plaintiff had adduced no statutory authority for it. Quoting *de Villers v. County of San Diego* (2007) 156 Cal.App.4th 238, 255-256, the majority concluded: " '[A] direct claim against a governmental entity asserting negligent

4

hiring and supervision, when not grounded in the breach of a statutorily imposed duty owed by the entity to the injured party, may not be maintained.' "

The Court of Appeal dissenter opined that "[a]lthough the school district cannot be held liable for the *intentional misconduct* of the *guidance counselor*, it may be liable through respondeat superior for the *negligence* of *other employees* who were responsible for hiring, supervising, training, or retaining her." Because school personnel were in a special relationship with plaintiff, they owed him a duty of taking reasonable care to prevent the abuse by Hubbell. Consequently, "the *failure* of a school administrator to exercise *ordinary care* in protecting students from harm should render a school district liable under section 815.2 where the administrator hires an applicant known to have a history of molesting students or where, *after* hiring an applicant, the administrator first learns about the employee's sexual misconduct and does not properly supervise, train, or discharge her."

We granted plaintiff's petition for review.

## DISCUSSION

The statutory framework upon which the District's vicarious liability depends is easily set out. Section 815 establishes that public entity tort liability is exclusively statutory: "Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Section 815.2, in turn, provides the statutory basis for liability relied on here: "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative. [¶] (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act

5

or omission of an employee of the public entity where the employee is immune from liability." Finally, section 820 delineates the liability of public employees themselves: "(a) Except as otherwise provided by statute (including Section 820.2), a public employee is liable for injury caused by his act or omission to the same extent as a private person. [¶] (b) The liability of a public employee established by this part (commencing with Section 814) is subject to any defenses that would be available to the public employee if he were a private person." In other words, "the general rule is that an employee of a public entity is liable for his torts to the same extent as a private person (§ 820, subd. (a)) and the public entity is vicariously liable for any injury which its employee causes (§ 815.2, subd. (a)) to the same extent as a private employer (§ 815, subd. (b))." (*Societa per Azioni de Navigazione Italia v. City of Los Angeles* (1982) 31 Cal.3d 446, 463.)

The parties' contentions, as is appropriate under section 815.2, subdivision (a), focus on whether supervisory and administrative employees of the District, who allegedly knew or had reason to know of Hubbell's dangerous propensities and acted negligently in hiring, supervising and retaining her, would themselves be subject to liability to plaintiff for his injuries. The District maintains its employees owed plaintiff no legal duty to protect him against abuse by another employee; the responsibility for hiring, supervising and dismissing employees belongs exclusively to the District itself, and no statute provides for the District's direct liability in this regard. Plaintiff, in turn, argues the special relationship between public school personnel and students imposes on the District's administrative and supervisory employees a duty of reasonable care to protect a

6

student from foreseeable dangers, including those from other school employees. For the reasons given below, we agree with plaintiff.[2]

"While school districts and their employees have never been considered insurers of the physical safety of students, California law has long imposed on school authorities a duty to 'supervise at all times the conduct of the children on the school grounds and to enforce those rules and regulations necessary to their protection. [Citations.]' [Citations.] The standard of care imposed upon school personnel in carrying out this duty to supervise is identical to that required in the performance of their other duties. This uniform standard to which they are held is that degree of care 'which a person of ordinary prudence, charged with [comparable] duties, would exercise under the same circumstances.' [Citations.] Either a total lack of supervision [citation] or ineffective supervision [citation] may constitute a lack of ordinary care on the part of those responsible for student supervision. Under section 815.2, subdivision (a) of the Government Code, a school district is vicariously liable for injuries proximately caused by such negligence." (*Dailey v. Los Angeles Unified Sch. Dist.*, *supra*, 2 Cal.3d at p. 747; accord, *Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 932-933; *Hoyem v. Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508, 513.)

---

[2]    That public school administrators and supervisors owe students a duty of care and may be responsible for their negligence in hiring, supervising and retaining staff does not mean they bear the financial risk of damages and defense costs for such negligence. Even when the individual public employee is sued for negligence (none has been here), the defense costs and any compensatory damages will ordinarily be paid by the employer, as a public employee sued for injuries arising out of negligent acts or omissions within the scope of his or her employment is generally entitled to a defense and indemnity by the public entity. (See §§ 825, 825.2, 995.)

7

In addition, a school district and its employees have a special relationship with the district's pupils, a relationship arising from the mandatory character of school attendance and the comprehensive control over students exercised by school personnel, "analogous in many ways to the relationship between parents and their children." (*Hoff v. Vacaville Unified School Dist.*, *supra*, 19 Cal.4th at p. 935; see *M.W. v. Panama Buena Vista Union School Dist.* (2003) 110 Cal.App.4th 508, 517; *Leger v. Stockton Unified School Dist.*, *supra*, 202 Cal.App.3d at pp. 1458-1459.) Because of this special relationship, imposing obligations beyond what each person generally owes others under Civil Code section 1714, the duty of care owed by school personnel includes the duty to use reasonable measures to protect students from foreseeable injury at the hands of third parties acting negligently or intentionally.[3] This principle has been applied in cases of employees' alleged negligence resulting in injury to a student by another student (*J.H. v. Los Angeles Unified School Dist.* (2010) 183 Cal.App.4th 123, 128-129, 141-148; *M.W.*, at pp. 514-515, 517-521), injury to a student by a nonstudent (*Leger*, at pp. 1452-1453, 1458-1459) and—on facts remarkably close to the present case—injuries to a student resulting from a teacher's sexual assault (*Virginia G. v. ABC Unified School Dist.* (1993) 15 Cal.App.4th 1848, 1851-1855).

In *Virginia G.*, the plaintiff, a junior high school student, alleged the defendant district had performed an inadequate background check before hiring as

---

[3]     Such a protective duty is appropriate in light of the fundamental public policy favoring measures to ensure the safety of California's public school students. (See Cal. Const., art. I, § 28, subd. (a)(7) [students "have the right to be safe and secure in their persons"]; see also Ed. Code, §§ 32228-32228.5, 35294.10-35294.15 [establishing various school safety and violence prevention programs].)

a teacher Ernest Ferguson, who had been fired from another school for sexual misconduct with students and who had then sexually harassed and assaulted the plaintiff. (*Virginia G. v. ABC Unified School Dist.*, *supra*, 15 Cal.App.4th at p. 1851.) Analyzing the case within the same statutory framework as applies here (see *id.* at p. 1854, citing §§ 815.2, subd. (a), 820, subd. (a)), the appellate court held the district could be liable for Virginia G.'s injuries under a theory of vicarious liability for other school personnel's negligent hiring and supervision of the molester: "In our case, while Ferguson's conduct in molesting Virginia G. will not be imputed to the District, *if individual District employees responsible for hiring and/or supervising teachers knew or should have known of Ferguson's prior sexual misconduct toward students, and thus, that he posed a reasonably foreseeable risk of harm to students under his supervision, including Virginia G., the employees owed a duty to protect the students from such harm.*" (*Virginia G.*, at p. 1855, italics added.)

The District acknowledges that a special relationship making an employee potentially liable for a student's injury at the hands of a third party "might exist where the individual employee is in direct charge of and supervising the student," but insists that a "principal, school superintendent, or other administrator who oversees the overall functioning" of the school cannot be liable on this theory: "They have no special relationship with any particular student. Their relationship is with the entity." We disagree. Responsibility for the safety of public school students is not borne solely by instructional personnel. School principals and other supervisory employees, to the extent their duties include overseeing the educational environment and the performance of teachers and counselors, also have the responsibility of taking reasonable measures to guard pupils against harassment and abuse from foreseeable sources, including any teachers or counselors they know or have reason to know are prone to such abuse. (See Cal.

9

Code Regs., tit. 5, § 5551 ["The principal is responsible for the supervision and administration of his school."]; *McGrath v. Burkhard* (1955) 131 Cal.App.2d 367, 372 ["[T]he principal has the necessary power which is inherent in his office to properly administer and supervise his school."].)

The District further argues that hiring and termination of certificated employees, including guidance counselors, is by law the responsibility of its governing board, not of individual administrators. But while the final authority to formally hire certificated employees belongs to the governing board (see Ed. Code, §§ 44830-44834), and firing a certificated employee requires action by both the board and an arbitral body known as a commission on professional competence (see *id.*, §§ 44932-44945),[4] administrators and supervisors have the power to initiate such actions by, for example, proposing to hire a teacher or counselor or filing charges that could lead to his or her suspension or termination. (See *id.*, § 44934 [dismissal proceedings may be initiated by a governing board formulating charges or by a person filing written and verified charges against the employee]; see, e.g., *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 631 [school's athletic director recommended to principal that the district hire a particular person as assistant coach; principal then referred the matter to district's governing board]; *Johnson v. Taft School Dist.* (1937) 19 Cal.App.2d 405, 406 [principal filed complaint with district board seeking teacher's dismissal].) That employment decisions are subject to approval by a school district's governing board does not necessarily absolve district administrators and supervisors of liability for their negligence in initiating or

---

[4] The governing board may, however, immediately suspend an employee on receipt of written charges of certain types of misconduct. (Ed. Code, § 44939.)

10

failing to initiate those decisions. (See *Fernelius v. Pierce* (1943) 22 Cal.2d 226, 239-241 [civil service board's ultimate authority to overrule termination decisions by police chief and city manager did not preclude liability of those administrators for negligent retention of police officers known to be unfit].)

The complaint, it is true, does not identify by name or position the District's "employees, administrators and/or agents" who allegedly failed to "properly hire, train and supervise Hubbell." But the District cites no statute or decision requiring a plaintiff to specify *at the pleading stage* which of the defendant's employees committed the negligent acts or omissions for which a public entity is allegedly liable under section 815.2. To survive a demurrer, the complaint need only allege facts sufficient to state a cause of action; each evidentiary fact that might eventually form part of the plaintiff's proof need not be alleged. (See *Golceff v. Sugarman* (1950) 36 Cal.2d 152, 154 [complaint against employer need not include allegation that negligent act was committed by employee in order for plaintiff to pursue respondeat superior liability].) We cannot say from the face of the complaint that the District had *no* supervisory or administrative personnel whose responsibilities included hiring, training, supervising, disciplining or terminating a guidance counselor.

In this connection, the District cites *Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 795, in which we explained that because public entity liability is statutory in nature, facts material to the existence of such liability must be pleaded with particularity. We went on to hold, however, that the plaintiff had adequately pled a bus driver's negligence by alleging the driver, aware of a violent argument on his bus, "did absolutely *nothing* to maintain order or protect passengers from injury . . . ." (*Id.* at pp. 795-796.) Plaintiff similarly alleges the District's employees knew or should have known of the guidance counselor's dangerous propensities and ongoing misconduct, but did nothing to prevent or stop

11

her harassment and abuse of plaintiff.  *Lopez* does not stand for the proposition that a plaintiff must specifically plead, before undertaking discovery, the *identity* of a government employee whose alleged negligence is made the basis for vicarious liability under section 815.2, and we doubt such an impracticable rule would be consistent with the legislative intent in enacting that statute.  (See *Perez v. City of Huntington Park* (1992) 7 Cal.App.4th 817, 820-821; Sen. Legis. Com. com., reprinted at 32 West's Ann. Gov. Code (1995 ed.) foll. § 815.2, p. 179 ["Under this section, it will not be necessary in every case to identify the particular employee upon whose act the liability of the public entity is to be predicated."].)[5]

More broadly, the District argues that "[i]ndividual co-workers, whether peers or supervisors, have no personal legal relationship with other employees" and therefore cannot be personally liable to third parties for "how they hire, fire, retain, or discipline co-workers."  As applied here, the argument is a non sequitur. Plaintiff relies not on the supervisory or administrative employees' legal relationship to *Hubbell*, their coworker, for the duty of care they owed plaintiff, but on their recognized special relationship with *plaintiff*, a pupil under their control and supervision.[6]

---

[5]     The court in *Munoz v. City of Union City* (2004) 120 Cal.App.4th 1077, 1113, opined that vicarious liability under section 815.2 "clearly contemplates that the negligent employee whose conduct is sought to be attributed to the employer at least be specifically identified, if not joined as a defendant" in order that the trier of fact may "determine if the elements needed to assert vicarious liability have been proved."  *Munoz*, however, was an appeal from a judgment for the plaintiff after a jury trial (*Munoz*, at p. 1083), not an appeal from dismissal after a demurrer as here.  Whatever the merits of the quoted remarks as to a jury trial, they have no application at the pleading stage.

[6]     The cases the District cites for this argument are inapposite.  In *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, we held a claim for wrongful termination in violation of public policy under *Tameny v. Atlantic*

*(footnote continued on next page)*

12

The District relies on three decisions rejecting, on various facts, claims of public entities' liability for negligence. As discussed below, none of these decisions supports the sustaining of a demurrer on the facts alleged here.

In *Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, we held that because no statute imposed liability on public entities for negligence in handling emergency calls, the defendant public entities were not directly liable for a 911 dispatcher's failure to send appropriate personnel and equipment to the scene of a household accident; vicarious liability for the dispatcher's own alleged negligence was barred by a statute providing qualified immunity for emergency rescue personnel. (*Id.* at pp. 1179-1185.) We did not consider in *Eastburn* any theory of vicarious liability analogous to that presented here (i.e., that the public entity was vicariously liable for the actions of administrative or supervisory personnel in hiring, supervising and retaining other employees), and the qualified immunity defense that governed vicarious liability in *Eastburn* has no possible application here.

*De Villers v. County of San Diego*, *supra*, 156 Cal.App.4th 238, involved a claim of public liability for a county toxicologist's murder of her husband with

---

*(footnote continued from previous page)*

*Richfield Co.* (1980) 27 Cal.3d 167 "can only be asserted against *an employer*" (*Miklosy*, at p. 900), and found no justification for imposing individual liability on supervisors for "a common law tort that depends on the existence of an employer-employee relationship between the tortfeasor and the victim" (*id.* at p. 901). Plaintiff's negligence claims, obviously, do not depend on any employment relationship between him and the District's administrative or supervisory personnel. *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158 and *Reno v. Baird* (1998) 18 Cal.4th 640, which involved employees' or former employees' statutory claims against employers for discrimination and retaliation, are even further off point. Whatever their personal legal obligations to coworkers and subordinate employees, school personnel have, as discussed above, a duty of ordinary care running to the pupils under their control and supervision.

poison taken from the county coroner's office in which she worked. Conceding the county could not be vicariously liable for the toxicologist's murderous acts, which were obviously outside the scope of her employment, the plaintiffs proposed theories of direct and vicarious liability for the county's negligence in hiring and supervising her. (*Id.* at p. 248.) The appellate court rejected direct liability on the ground that the plaintiffs had failed to "identify any statutory basis supporting a direct claim against a governmental entity for injuries allegedly caused by the entity's generic negligence in hiring and supervising its employees." (*Id.* at p. 253.) Nor, under section 815.2, could the county be vicariously liable for its employees' failure to properly investigate the toxicologist when she was hired or to guard against her theft of poisonous drugs, as "there was no evidence supporting a conclusion any County employee had undertaken a special protective relationship toward de Villers." (*De Villers*, at p. 249.) In the absence of such a special relationship, the toxicologist's supervisors and coworkers owed her husband no duty to prevent his murder and could therefore not be personally liable for his death, defeating public entity liability under section 815.2. (*De Villers*, at pp. 249-251.)

The *de Villers* court's reasoning on vicarious liability distinguishes it from the present case. As Justice Mallano explained, dissenting below, in *de Villers* "[n]o one in the coroner's office had the responsibility, within the scope of his or her employment, to ensure that employees were not going to use laboratory poison to murder their relatives. As a result, section 815.2, authorizing the liability of a public entity under the doctrine of respondeat superior, did not come into play." In contrast, school personnel "have a duty to protect students from harm, which includes an obligation to exercise ordinary care in hiring, training, supervising, and discharging school personnel. An administrator who hires a known child molester as a guidance counselor and fails to provide adequate training,

14

supervision, or termination when faced with ongoing sexual misconduct has failed to perform the duties within the scope of his or her employment.  Under section 815.2, the school district is liable for the administrator's negligence."

Finally, in *Munoz v. City of Union City*, *supra*, 120 Cal.App.4th at pages 1081-1082, the relatives of a woman shot by police, who had been summoned because of her erratic behavior, sued the officer who shot her and his employing city.  The appellate court held the city could be vicariously liable for the officer's unreasonable use of deadly force, but rejected a theory of direct liability based on the city's negligence "in the selection, training, retention, supervision, and discipline of police officers." (*Id.* at p. 1112.)  As no statute made a public entity liable for this type of negligence, no direct liability could be established under section 815 as interpreted in *Eastburn v. Regional Fire Protection Authority*, *supra*, 31 Cal.4th 1175.  (*Munoz*, at pp. 1110-1113.)  The court went on to reject the plaintiffs' argument that the city's negligence was actually the basis for *vicarious* liability because public entities' negligence liability is inherently vicarious.  "[W]hile respondents are correct insofar as they state public entities always act through individuals, that does not convert a claim for direct negligence into one based on vicarious liability. . . .  To accept respondents' argument would render the distinction between direct and vicarious liability completely illusory in all cases except where the employer is an individual." (*Id.* at p. 1113.)

Unlike the theory rejected in *Munoz*, plaintiff's theory of the District's liability does not depend on blurring the line between direct and vicarious liability or on an assumption that a public entity's negligence liability is inherently vicarious.  Plaintiff alleges the District's administrators and employees knew or should have known of Hubbell's dangerous propensities, but nevertheless hired, retained and failed to properly supervise her.  These allegations, if proven, could

15

make the District liable under a vicarious liability theory encompassed by section 815.2.

The lead opinion in *John R. v. Oakland Unified School Dist.*, *supra*, 48 Cal.3d at page 446, it is true, referred to the school district's potential liability for negligent hiring and supervision of the molesting teacher as "direct." In context, however, that label served merely to distinguish the negligent hiring and supervision theory from the theory that the district was vicariously liable for the teacher's molestation, a theory we rejected on the ground the molestation was beyond the scope of the teacher's employment. (*Id.* at pp. 447-452.) To the same effect is *Delfino v. Agilent Technologies, Inc.* (2006) 145 Cal.App.4th 790, 815, referring to a negligent supervision and retention theory as one of "direct liability," where the plaintiff had also sought to hold the employer vicariously liable for the intentional torts of its employee. (See also *Diaz v. Carcamo* (2011) 51 Cal.4th 1148, 1152 [characterizing negligent entrustment as a theory making the employer "liable for its own negligence," without considering an employer's possible vicarious liability for a manager's negligent entrustment of a vehicle to a subordinate].) As these decisions did not consider the theory of vicarious liability posited here—that the District is liable under section 815.2 for the negligence of its administrative and supervisory personnel—they cannot be taken as either endorsing or precluding this theory.

This is not the first time we have held public school personnel may be individually liable for their negligent failure to protect students from harm at others' hands. In *Dailey v. Los Angeles Unified Sch. Dist.*, *supra*, 2 Cal.3d 741, one high school student unintentionally killed another while roughhousing during the lunch recess. The decedent's parents sued not only the district, *but also two individual members of the school's physical education staff* who were responsible for the area around the gymnasium where the incident took place but had failed to

16

supervise students in the area during the lunch period. (*Id.* at pp. 744-746.) We held that because the evidence was sufficient to support a finding of negligence by the two instructors, the trial court erred in granting a directed verdict for the defendants. (*Id.* at pp. 749-751.) The school district's liability derived vicariously from that of the two instructors, resting, as in the present case, on section 815.2. (*Dailey*, at p. 747; see also *J.H. v. Los Angeles Unified School Dist.*, *supra*, 183 Cal.App.4th at pp. 128, 148-149 [recognizing potential liability on part of individual school employees as well as district for failing to protect student from attack]; *Leger v. Stockton Unified School Dist.*, *supra*, 202 Cal.App.3d at pp. 1452-1453 [same].)[7]

Nor does our holding that public school administrators and supervisors may be held legally responsible for their negligence in hiring and retaining as well as supervising school staff subject the great majority of public school personnel, much less other employees, to potential liability for acts committed by their fellow workers. The scope and effect of our holding on individual liability is limited by requirements of causation and duty, elements of liability that must be established in every tort action. (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673.)

With regard to causation, plaintiff alleges he suffered emotional and physical injuries "[a]s a result of" defendants' negligent hiring and retention of the guidance counselor, and the District does not argue the causation element is inadequately pled. But where an individual defendant did not have final authority over the hiring or firing of the malefactor employee, but was merely in a position

_____

[7]     As noted earlier, however (see fn. 2, *ante*), public employees, including school personnel, are entitled to a defense and indemnity for negligent torts within the scope of their employment.

17

to propose or recommend such action, *proving* causation may present a significant obstacle.  Plaintiff here, and those similarly alleging individual negligence in hiring and firing, must demonstrate that the individual employee's proposal or recommendation, or failure to take such action, was a substantial factor (*Mitchell v. Gonzales* (1991) 54 Cal.3d 1041, 1052) in causing the malefactor to be hired or retained.  While it may well be possible to prove that a public school principal's recommendation, particularly as to hiring, effectively determined the governing board's decision, the same could not be said of every individual employee who recommends to management that a particular person be hired into the organization, or who could have, but did not, seek a coworker's discipline or termination.  Even if other elements of the tort action were established, then, an employee who did not actually make the hiring or retention decision and whose recommendations were not, in the particular circumstances of the organization, likely to be highly influential to the decision maker would not face the potential for individual liability.

Turning to the duty element, we have explained that the potential legal responsibility of District administrators and supervisors for negligently hiring or retaining Hubbell arises from the special relationship they had with plaintiff, a student under their supervision, which relationship entailed the duty to take reasonable measures to protect plaintiff from injuries at the hands of others in the school environment.  Absent such a special relationship, there can be no individual liability to third parties for negligent hiring, retention or supervision of a fellow employee, and hence no vicarious liability under section 815.2 (or, for private organizations, under common law respondeat superior principles).  For example, in *de Villers v. County of San Diego*, *supra*, 156 Cal.App.4th at pages 249-250, because other employees of the coroner's office had no special relationship with the husband of the homicidal toxicologist, they had no duty to protect him against

18

his wife, and there could be no individual liability (or vicarious liability by the county) for their failure to investigate the toxicologist before hiring her.

Additional limits emerge from our consideration, under *Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*),[8] of the scope of the duty implicated in this and similar cases. In *Randi W. v. Muroc Joint Unified School Dist.* (1997) 14 Cal.4th 1066, 1077-1081, we decided, through a *Rowland* analysis, that staff at school districts *previously* employing a teacher with a history of sexual contact with students bore a duty not to misrepresent the teacher's qualifications and character. But, by the same analysis, we limited potential liability for letters of recommendation to actual misrepresentations, as distinct from nondisclosures, and to circumstances in which the misrepresentation "present[ed] a substantial, foreseeable risk of physical injury to the third persons." (*Randi W.*, at p. 1081.) A similar analysis is appropriate here in order to decide under what general circumstances the protective duty arising from the special relationship between individual school administrators, supervisors and students extends to a duty of care in taking or failing to take action to further the hiring or firing of subordinate school staff.

---

[8] In *Rowland*, we outlined several factors to be used in determining a tort duty's existence and scope: "[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland*, *supra*, 69 Cal.2d at p. 113.) We have previously used this analysis to decide the scope of duty arising from a special relationship. (See *Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1213-1218.)

In this factual context, foreseeability and its related *Rowland* factors (see *Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 774) depend largely on the same factual question we have discussed in relation to causation: whether the individual whose negligence allegedly led to the malefactor employee's hiring or retention was, under the circumstances, likely to be highly influential to the actual decision maker. It is not generally foreseeable, for example, that a hiring recommendation made by an employee outside an organization's circles of authority and influence will cause harm to a third party.

Additional duty limits are suggested by the *Rowland* considerations of the extent of moral blame and the policy balance between the prevention of future harm and the burdens created by imposing a duty of care. (See *Cabral v. Ralphs Grocery Co.*, *supra*, 51 Cal.4th at pp. 781-782.) Unless the individual alleged to be negligent in a hiring or retention decision knew or should have known of the dangerous propensities of the employee who injured the plaintiff, there is little or no moral blame attached to the person's action or inaction. And unless the employee's propensities posed a substantial risk of personal injury to the plaintiff or others in the same circumstances, there is again little moral blame to assign, and the undesirable consequences of imposing potential liability—the possible chilling of recommendations and proposals for hiring and retention—will tend to outweigh the policy of preventing harm by imposing costs on negligent conduct. (See *Randi W. v. Muroc Joint Unified School Dist.*, *supra*, 14 Cal.4th at p. 1081.)

In *John R. v. Oakland Unified School Dist.*, *supra*, 48 Cal.3d at page 451, we noted with concern the undesirable consequences that could flow from imposing vicarious liability on public school districts for sexual misconduct by teachers, including "the diversion of needed funds from the classroom to cover claims" and the likelihood districts would be deterred "from encouraging, or even authorizing, extracurricular and/or one-on-one contacts between teachers and

20

students." To these still valid concerns we should add the possibility that unsubstantiated rumors of sexual misconduct might curtail or destroy the careers of innocent teachers, counselors or other employees. Against these concerns, we have weighed in this case the value of negligence actions in providing compensation to injured parties and preventing future harm of the same nature, and have followed *John R.*'s suggestion that these remedial goals are best addressed "by holding school districts to the exercise of due care" in their administrators' and supervisors' "selection of [instructional] employees and the close monitoring of their conduct," rather than by making districts vicariously liable for the intentional sexual misconduct of teachers and other employees. (*Ibid.*) At the same time, we emphasize that a district's liability must be based on *evidence* of negligent hiring, supervision or retention, not on assumptions or speculation. That an individual school employee has committed sexual misconduct with a student or students does not of itself establish, or raise any presumption, that the employing district should bear liability for the resulting injuries. We note, as well, that even when negligence by an administrator or supervisor is established, the greater share of fault will ordinarily lie with the individual who intentionally abused or harassed the student than with any other party, and that fact should be reflected in any allocation of comparative fault.

Within these limits, we conclude a public school district may be vicariously liable under section 815.2 for the negligence of administrators or supervisors in hiring, supervising and retaining a school employee who sexually harasses and abuses a student. Whether plaintiff in this case can prove the District's administrative or supervisory personnel were actually negligent in this respect is not a question we address in this appeal from dismissal on the sustaining of a demurrer.

## DISPOSITION

The judgment of the Court of Appeal is reversed, and the matter is remanded to that court for further proceedings consistent with our opinion.

**WERDEGAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**KENNARD, J.**
**BAXTER, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** C.A. v. William S. Hart Union High School District
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 189 Cal.App.4th 1166
**Rehearing Granted**

_____

**Opinion No.** S188982
**Date Filed:** March 8, 2012
_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Melvin D. Sandvig

_____

**Counsel:**

Manly & Stewart, Vince W. Finaldi, John C. Manly; Esner, Chang & Boyer, Stuart B. Esner and Holly N. Boyer for Plaintiff and Appellant.

Greines, Martin, Stein & Richland, Robert A. Olson, Feris M. Greenberger, Timothy T. Coates; McCune & Harber, Stephen M. Harber and Joseph W. Cheung for Defendants and Respondents.

Dannis Woliver Kelley, Sue Ann Salmon Evans and Chad William Herrington for Education Legal Alliance of the California School Boards Association as Amicus Curiae on behalf of Defendants and Respondents.

Jennifer B. Henning for California State Association of Counties and League of California Cities as Amici Curiae on behalf of Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Stuart B. Esner
Esner, Chang & Boyer
234 East Colorado Boulevard, Suite 750
Glendale, CA  91101
(626) 535-9860

Robert A. Olson
Greines, Martin, Stein & Richland
5900 Wilshire Boulevard, 12th Floor
Los Angeles, CA  90036
(310) 859-7811