Filed 10/24/22  Roe v. Hacienda La Puente Unified School Dist. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JANET ROE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>HACIENDA LA PUENTE UNIFIED SCHOOL DISTRICT et al.,<br><br>    Defendants and Respondents. | B310850<br><br>(Los Angeles County Super. Ct. No. BC615789) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Peter A. Hernandez, Judge.  Affirmed.

Singleton Schreiber, Benjamin I. Siminou, Harini P. Raghupathi; Estey Bomberger, Stephen J. Estey and Mary Bajo for Plaintiff and Appellant.

Winet Patrick Gayer Creighton & Hanes and Randall L. Winet for Defendants and Respondents.

While appellant Janet Roe was in high school, a teacher at respondent Hacienda La Puente Unified School District (District) had sexual contact with her. Roe sued District and her school principal for negligent supervision. The trial court entered summary judgment against Roe. (Code Civ. Proc., § 437c.)

On de novo review, we find no triable issue of material fact. District agrees it has a special relationship with students. It showed that it adopted policies forbidding inappropriate staff behavior, had its administrators patrol school hallways, and Roe never reported any misbehavior. Roe did not show a triable issue by presenting nonspeculative evidence that District knew or should have known its teacher posed a risk of reasonably foreseeable harm. We affirm.

**FACTS**

Roe attended Los Altos High School. In 2010, after ninth grade, she sought to enroll in a summer school chemistry class, to prepare for an advanced placement (AP) class in the fall. The summer class was full but the teacher, David Park, told Roe she could attend on a noncredit basis. She sat by Park's desk because there were no other available seats in the classroom.

Park never spoke inappropriately to Roe in class or in front of others; however, he obtained her cell phone number and began texting her outside of school, asking questions about her sex life. Roe knew the texts were inappropriate but decided not to tell anyone. She felt scared, did not want to be in the limelight, and believed people would think she was at fault.

In 10th grade, Roe ate lunch with Park in his classroom, almost daily, for the entire school year. Sometimes they were joined by other students. Roe and Park talked about her home, parents and school; they did not discuss sex. Roe's AP chemistry

2

teacher, Mr. Ackerman, was in an adjoining classroom and, according to Roe, was "aware" that Roe and Park lunched together. No other school staff members knew of their lunches. Park entered Ackerman's classroom four or five times to chat with Roe and ask if she understood the class material.

Park continued to "sext" Roe outside of school while she attended 10th grade. He often said he loved and wanted to marry her but told her " 'to keep it a secret because he could lose everything.' " Despite Park's misbehavior, Roe lunched with him because "I was afraid that he would try to ruin my reputation or try and hurt me in some way."

One evening Roe's father asked her to leave the family home during a parental argument. When Roe texted Park about her predicament, he picked her up and drove her to his home. He suggested she sleep with him in his bed, and she agreed. Roe awoke when she felt Park kissing her from her stomach up to her breasts. He complied when she told him to stop and take her home. Roe did not tell anyone about this incident.

A few months later, Park blocked his classroom door as Roe prepared to leave, put his hands on her shoulders and kissed her, saying he loved her. She replied that she loved him back, but not in the same way, then left the room. Roe confided in a friend about the kiss in the classroom. The friend was shocked and disgusted but agreed to keep it a secret, at Roe's insistence. Park did not touch Roe after that.

It is undisputed that Roe did not report her interactions with Park before she graduated from high school in 2013. She "had a fear that if I came out and told anybody, nobody would believe me." Also, she was afraid he might hurt her or make her a social outcast.

3

In 2015, after hearing that Park was arrested for an improper relationship with a student, Roe reported Park's misbehavior with her to police. It is undisputed that until Roe's 2015 disclosure, District was unaware that Park texted Roe, touched her at his home, or kissed her on campus. Roe did not report her relationship with Park to District, to respondent school principal Cheli McReynolds, counselors, or her parents.

A parent called the school at some point to report that Park gave her daughter a purse. Questioned by Principal McReynolds, Park said he gave the student the purse for her birthday because she wanted it and he thought she could not afford it. McReynolds told Park it was inappropriate to give gifts to a student and advised him to speak to a counselor if he really thinks a student is in need.

Training materials say that grooming is accomplished through a series of inappropriate boundary invasions, which should be stopped before they escalate. Examples include gift giving, being overly touchy, taking an undue interest in or favoring a student, being alone with a student behind closed doors at school, taking students on outings away from protective adults, extending contact with students outside of school, using e-mail or text messaging to discuss personal topics with students, inviting students to the teacher's home without a chaperone, engaging in sexual innuendo or banter, or hugging, kissing or having physical contact. Teachers are mandated reporters.

McReynolds is aware that teachers can be sexual predators. District policy is that a teacher should not be alone with a student behind closed doors; a teacher who sees a colleague alone with a student should tell a supervisor. McReynolds and other supervisors walk the halls during the lunch period. A teacher,

4

Mr. Hughes, told a District administrator that Park was apathetic about teaching. Though bothered by Park's disinterest in male students, Hughes did not see Park act inappropriately with female students.

## PROCEDURAL HISTORY

In 2016, Roe filed a complaint against Park, District, and McReynolds.[1] Roe asserts a cause of action against respondents for negligent supervision, causing personal injury.

Respondents requested summary judgment. They argued that they are not liable because they had no actual knowledge of Park's improper conduct. Constructive notice that Park and Roe lunched together does not prove that respondents should have known of an untoward relationship.

In opposition, Roe argued it was reasonably foreseeable that she would be harmed. Respondents are generally aware that students can be sexually abused, even if they had no knowledge that Park had ever previously done so. They knew or should have known, given statistics on sexual assaults by teachers, that Park's focus on female students should have been reported because he had the potential to abuse minors.

Respondents did not dispute the special relationship between them and Roe but replied that "they were unaware of sufficient facts to obligate them to take any particular action to protect Plaintiff against Mr. Park, or that his sexual assault was foreseeable." Even if respondents knew that teachers may commit sexual misconduct with students, they did not know remedial measures were needed as they had no knowledge that Park had a propensity to abuse Roe.

---

[1] Defendant Park is not a party to this appeal.

5

## THE COURT'S RULING

The court granted respondents' motion. It identified the issue as whether respondents "knew or should have known that Defendant Park posed a risk of harm to students and the risk was reasonably foreseeable" to respondents. The court expressly rejected District's claim that it need only show actual knowledge of Park's assaultive propensities. Respondents met their initial burden by showing that no administrators or supervisors had notice that Park was a danger. Roe admittedly never told school staff or her parents about her relationship with Park, and he never behaved inappropriately in front of others.

The court found Roe did not meet her burden of showing a triable issue of material fact. School employees did not suspect inappropriate behavior; further, Roe testified that they did not speak about sex at lunch, discussing only family and school. No evidence proves that teacher Ackerman observed Roe and Park lunching alone behind closed doors. A 2015 parental report about Park's gift to a student does not prove that respondents knew or suspected he posed a risk of harm to Roe years earlier. Though teacher Hughes observed that Park seemed disinterested in male students, he testified that he never saw Park interact with female students in a way that suggested an improper relationship. The court entered judgment for respondents.

## DISCUSSION

### 1. Appeal and Review

The judgment is appealable. (Code Civ. Proc., § 904.1, subd. (a)(1); *Walker v. Stauffer Chemical Corp.* (1971) 19 Cal.App.3d 669, 671 [plaintiff may appeal a summary judgment in favor of one of several defendants].) Summary judgment is appropriate where no triable issue of material fact exists and the

6

moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)

We independently examine the record to determine if triable issues of fact exist.  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.)  "Evidence presented in opposition to summary judgment is liberally construed, with any doubts about the evidence resolved in favor of the party opposing the motion." (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)  Establishing a negligence claim requires proof of a duty, breach, causation, and damages.  (*Ibid*.)

## 2.  District's Duty To Protect Students

The special relationship between a school district and its students imposes obligations requiring school personnel to "use reasonable measures to protect students from foreseeable injury at the hands of third parties acting negligently or intentionally." (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 869–870 (*C.A.*) [special relationship arises from the mandatory character of school attendance and the school's comprehensive control over students].)  A school district may be vicariously liable for negligently supervising and retaining a school employee who sexually harasses and abuses a student. (*Id*. at p. 879.)

Though school districts are not insurers of the physical safety of students, " 'California law has long imposed on school authorities a duty to "supervise at all times the conduct of the children on the school grounds and to enforce those rules and regulations necessary to their protection." . . . This uniform standard to which they are held is that degree of care "which a person of ordinary prudence, charged with [comparable] duties, would exercise under the same circumstances."  [Citations.]

7

Either a total lack of supervision [citation] or ineffective supervision [citation] may constitute a lack of ordinary care on the part of those responsible for student supervision.' " (*C.A., supra,* 53 Cal.4th at p. 869.)

"[E]ven when two parties may be in a special relationship, the unforeseeability of the kind of harm suffered by the plaintiff or other policy factors may counsel against establishing an affirmative duty for one party to protect the other." (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 219 (*Brown*).) Numerous policy considerations "may weigh against imposing a duty to protect in a given case." (*Id.* at p. 211.)[2]

There is no question that respondents have a duty to protect Roe from predatory behavior by a teacher. The parties have focused their arguments on whether any evidence shows that respondents failed to exercise supervisory care to avoid a foreseeable injury.

### 3. Roe's Claims

As framed by her complaint (*Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 74), Roe's theory is that respondents failed "to enact policies and

---

[2] These considerations include " 'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' " (*Brown, supra*, 11 Cal.5th at p. 217, quoting *Rowland v. Christian* (1968) 69 Cal.2d 108, 112–113.)

8

procedures that prevented students from being alone and unsupervised with teachers in classrooms before, during and after school hours," and she "was negligently allowed to be alone with defendant PARK in his classroom on multiple occasions."

Respondent McReynolds testified that District policy discourages teachers from being alone with students behind closed doors. Roe did not dispute that District distributed a "Employee/Student Interaction Notice" to its personnel, listing policies designed to stop sexual abuse. Roe's brief states that District provided "annual training on ways to protect students from sexual abuse," which listed grooming behaviors such as taking an undue interest in a student, inviting a student to the classroom at non-class times, or being alone with a student behind closed doors. School staff is required to report violations of the no-closed-door policy.

Roe focuses on District's failure to enforce its policies. There are two components to her claim: She contends (1) there was *actual knowledge* of her lunches with Park or (2) District *should have known* Park was grooming Roe. As discussed below, Roe did not show that District failed to take reasonable measures to protect her from injury.

a. *No Evidence of Actual Knowledge of Misbehavior*

Roe concedes that respondents did not see Park's misbehavior: He did not say inappropriate things to her in front of others and she did not report him. Instead, she asserts that respondents knew Park was grooming her for abuse because teacher Ackerman "knew about Park's daily lunches with her." She argues, "[T]he evidence showed Ackerman was in an adjoining classroom with a line of sight into Park's classroom." Ackerman was required to report Park's suspicious behavior.

9

The record does not support Roe's claim. Without testimony or a declaration from Ackerman, Roe invites us to speculate and conjecture whether he knew about her lunches with Park.[3] Roe testified that she "would see [Ackerman] from time to time," without saying if it was before lunch, during lunch, or in class. Assuming Roe saw Ackerman at lunch, the record does not show Ackerman saw Roe. Roe's testimony proves nothing.

The pages Roe cites do *not* say there is "a line of sight" between the classrooms. Roe testified that the classrooms have "a storage area" between them, without explaining how this affords a view from one room to another. If the sight line is through a window or open door, we do not know if Ackerman, in his classroom, looked through the window or door at Park and Roe. Nor do we know if Ackerman could see if they were alone, with the door closed, or with others.

Roe argues that "Ackerman also observed Park dropping in on his AP Chemistry class to visit [Roe]" four or five times. Once again, Roe speculates what Ackerman saw or heard. The page Roe cites does *not* say Park "interrupted the class for no other reason than to talk to [Roe]." No one, including Roe's peers, attested to any interruptions. Instead, Roe testified that Park walked into the class. She did not specify whether this occurred before or during instruction or after it ended, or whether Park spoke to other AP chemistry students. The record does not show he favored her in a manner that mandated a report.

---

[3] Counsel told the trial court that Ackerman was deposed. His testimony was not offered in support of or in opposition to the summary judgment motion.

10

The facts here do not compare to those in *Doe v. Lawndale Elementary School Dist.* (2021) 72 Cal.App.5th 113.  In that case, peers of a middle school victim testified that a teacher "always sat or stood next to" the victim, in a class he did not teach; he tickled, hugged and " 'flirted' " with her; had her sit on his lap with her head on his shoulder; it was " 'obvious' " they were a " 'couple' " or had a " 'girlfriend/boyfriend-type' " relationship. (*Id.* at p. 122.)  Roe's case lacks these obvious red flags.

Roe asks us to infer that because she saw Ackerman "from time to time" he presumably saw her with Park.  On this record, it is unreasonable to infer that Ackerman looked in Roe's direction.  "[A] district's liability must be based on *evidence* of negligent hiring, supervision or retention, not on assumptions or speculation."  (*C.A., supra,* 53 Cal.4th at p. 878.)  We decline to speculate or assume that Ackerman saw Roe lunching with Park.  The one certainty seems to be that Ackerman never reported any suspicious behavior.  The record does not allow a conclusion that respondents had actual knowledge of grooming behavior.

*b. No Evidence District Should Have Known of Misconduct*

Roe contends that respondents should have known of Park's nefarious intent because school personnel "patrolled the school at lunch to prevent teachers from spending time alone with students [which] gave them numerous opportunities to discover Park was grooming [Roe] by spending lunches alone with her in his classroom."[4]  Roe asserts that District failed to

_____

[4] Roe does not claim the abuse was foreseeable because Park had a history of sexual abuse. (*Virginia G. v. ABC Unified School Dist.* (1993) 15 Cal.App.4th 1848, 1855 [district may be liable for sexual misconduct of a teacher who was previously fired from another school for sexual misconduct with students].)  Roe

"patrol the school grounds to disrupt teachers and students spending time alone together in a classroom."

Roe suggests that District should keep doors open if class is not in session or have staff members check behind closed doors while patrolling. However, the law does not require "round-the-clock supervision or prison-tight security for school premises." (*Bartell v. Palos Verdes Peninsula Sch. Dist.* (1978) 83 Cal.App.3d 492, 500.) Roe cites no policy requiring open doors or checking behind doors. McReynolds testified that administrators "walk the campus" but do not check behind closed doors "because we're a big campus and I have students everywhere."

Once respondents carried their initial burden of showing they patrolled campus, Roe did not carry her burden of proving the inadequacy of the patrols. She did not submit expert opinion that respondents failed to take adequate measures. (See *Jennifer C. v. Los Angeles Unified School Dist.* (2008) 168 Cal.App.4th 1320, 1330–1331 [safety expert opined that school patrols were inadequate for a vulnerable special needs student who was sexually assaulted in a stairwell alcove by another student]; *Doe v. Lawndale Elementary School Dist., supra,* 72 Cal.App.5th at p. 122 [expert declared that a teacher's " 'open and obvious' " predatory behavior " 'clearly gave rise to an appearance of impropriety,' " and given the seriousness and frequency of that behavior, supervisors failed respond to " 'red flags' "].)

Having lunch is not proof of misconduct. Sexual misconduct is not "foreseeable any time a minor and an adult are alone in a room together." (*John R. v. Oakland Unified School*

---

conceded below that respondents "had no knowledge that Park had previously sexually or physically abused anyone."

*Dist.* (1989) 48 Cal.3d 438, 450, fn. 9.) It is undesirable to impose liability on a school district for allowing "one-on-one contacts between teachers and students." (*Id.* at p. 451; *C.A., supra,* 53 Cal.4th at p. 878.) Though Park violated District policy against meeting a student behind a closed door, there is no evidence that respondents were aware of it or that it would have made a difference if they knew. Roe testified that no sexual misconduct occurred during lunch, when she and Park discussed school, her parents and home life.[5]

### 4. Summary Judgment Was Properly Granted

It is undisputed that Roe never reported sexual texts Park sent her after school hours, her visit to his home, or his classroom kiss. Respondents first learned of these events in 2015, after Roe's graduation. She knew Park's behavior was inappropriate when it occurred in 2010–2011 but did not disclose it.

Respondents owed Roe a duty to use the degree of care which a person of ordinary prudence, charged with comparable duties, would exercise in the same circumstances. (*C.A., supra,* 53 Cal.4th at p. 869.) There is no evidence from which a trier of fact could reasonably conclude that respondents could foresee a likelihood of harm because they knew or should have known Park was engaging in sexual misconduct. Roe did not show " 'a total lack of supervision' " or " 'ineffective supervision' " amounting to " 'a lack of ordinary care on the part of those responsible for student supervision.' " (*Ibid.*)

---

[5] Roe does not press her claim that respondents were alerted to grooming when Park gave a student a birthday gift. It appears that the gift was given after Roe graduated.

13

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

CHAVEZ, J.

HOFFSTADT, J.

14