Filed 5/21/26  G.B. v. Los Angeles Unified School Dist. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| G.B.,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>LOS ANGELES UNIFIED SCHOOL DISTRICT,<br><br>      Defendant and Respondent. | B345031<br><br>(Los Angeles County<br> Super. Ct. No. 23STCV09475) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Thomas Long, Judge.  Affirmed.

Herman Law, Justin R. Felton, Allegra Rineer and Virginia Martucci for Plaintiff and Appellant.

BDG Law Group, Renee B. Brown, Michele M. Goldsmith and Matthew R. Hicks for Defendant and Respondent.

## INTRODUCTION

Plaintiff and appellant G.B. was sexually abused by a counselor at his junior high school in the late 1960s. In 2023, G.B. sued defendant and respondent Los Angeles Unified School District (the District) for negligent hiring, retention, and supervision of his abuser, Norbert Volk. The District moved for summary judgment on the grounds that it had no notice of Volk's abuse, which took place off school grounds in Volk's home. The trial court granted the motion and entered judgment in favor of the District. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

G.B. started seventh grade at George Washington Carver Junior High School (Carver) in fall 1966. He was 12, and Volk was his assigned counselor. Volk began to take G.B. off campus to his home, where G.B. would spend the night. During the night, Volk would get in bed with G.B. and perform sexual acts on him.

G.B. testified that the abuse "went on a few times in [1967], [1968]. But in [1969], it stopped." More specifically, he testified that it stopped in the first semester of his ninth grade year, which was fall 1968.[1] G.B. graduated the next semester, spring 1969, at the end of his ninth grade year, and had very limited further interactions with Volk. G.B. did not report the abuse to anyone until he told his then-girlfriend about it in 1980, and did not know whether any school staff had even seen him leave campus with Volk.

Sadly, G.B. was not the only victim—there were at least seven others. One of those alleged victims, O.B., testified that he told three school staff members that Volk was abusing him: two teachers and an administrator.

---

[1] In response to a question about when the abuse occurred during his eighth grade year, G.B. testified it happened three times during the fall and winter, the last of which was in January 1968.

2

O.B. told the teachers, Tom Davis and Webster Johnson, no earlier than fall 1969, which was the beginning of Johnson's employment at the school. It is not clear when O.B. told the administrator, Vice Principal Willy Williams; O.B.'s testimony does not provide a time frame. Volk remained an employee of the District until 1987, when he was terminated for "[p]oor judgment and inappropriate behavior in maintaining a professional relationship with a student."

In April 2023, G.B. sued the district. In May 2023, he filed a first amended complaint alleging causes of action for negligence and negligent hiring, retention, and supervision. In April 2024, the District moved for summary judgment, arguing first that G.B.'s testimony showed the District had no notice of the risk Volk posed and therefore no duty or ability to prevent the abuse. Secondarily, the District argued that because the abuse occurred off-campus, Education Code section 44808 immunizes the District from liability.

G.B. argued that O.B.'s reports were sufficient to provide the District with notice about Volk. He also suggested the abuse may have continued into 1970 because he remembered the song "After Midnight" playing while the abuse occurred and thought it may have been the version sung by Eric Clapton, which was not released until October 1970. Finally, G.B. argued that Education Code section 44808 did not immunize the District because even though the abuse occurred off-campus, the District should not have allowed Volk to take a student off-campus in the first place.

The trial court granted the motion for summary judgment, explaining that Volk's abuse of G.B. ended no later than fall 1968, and O.B.'s report to Davis and Johnson happened no sooner than fall 1969, meaning that O.B.'s report to Davis and Johnson could not have provided the District with notice

3

in time to help G.B.  It further explained that G.B.'s conjecture about the abuse continuing into 1970 based on the song "After Midnight" was just that—conjecture.  The first version of the song "After Midnight" was released in 1966, G.B.'s specific testimony was that the abuse stopped no later than fall 1968, and his speculation that "I think it was Eric Clapton who sung the song" was not sufficient to create a triable issue of fact that the abuse continued into 1970.  The court also agreed that Education Code section 44808 immunized the District from liability, and granted summary judgment on that ground as well.

The trial court entered judgment for the District on January 7, 2025.  G.B. timely appealed.


## DISCUSSION

On appeal from a grant of summary judgment, our review is de novo.  (*Olson v. La Jolla Neurological Associates* (2022) 85 Cal.App.5th 723, 733.)  California summary judgment law may be summarized as follows: "If a party moving for summary judgment in any action . . . would prevail at trial without submission of any issue of material fact to a trier of fact for determination, then he should prevail on summary judgment."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 855 (*Aguilar*).)

Because school districts are public entities, their tort liability is governed entirely by statute.  (Gov. Code, § 815.)  However, an employee of a public entity is liable for his torts to the same extent as a private person.  (Gov. Code, § 820, subd. (a).)  And a public entity is vicariously liable for the acts of its employees to the same extent as a private employer.  (Gov. Code, § 815.2.)  Therefore, a school district may be liable if a supervisory employee fails to respond to evidence that a subordinate may be harming students.

4

(*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 868–870 (*Hart*).)  A school district may likewise be liable if a hiring employee hires or retains a person who poses a foreseeable risk of harm to students.  (*Ibid*.)  To establish liability under either theory, a plaintiff must show that a hiring or supervisory employee knew or should have known about the risk posed by the abuser.  (*Id.* at 869–870.)

It is undisputed that the District's liability here turns on whether a person in a supervisory role at the District had notice that Volk posed a risk to G.B.  (*Hart, supra,* 53 Cal.4th at p. 870.)  In this context, notice may be actual or constructive.  (*Roe v. Hesperia Unified School Dist.* (2022) 85 Cal.App.5th 13, 25 (*Roe*).)  Constructive notice exists where a supervisory employee is in possession of facts that lead to an inference of danger.[2]  (*Id.* at p. 26, 28–31.)

We note that the District submitted no evidence to dispute G.B.'s allegations of abuse.  And we further note that G.B. appears to be the first in a line of alleged victims.  Nevertheless, there is no evidence that anyone had notice of Volk's behavior before his abuse of G.B. stopped in 1968.  G.B. did not report the abuse.  There is no evidence that any staff member saw him leave with Volk.  O.B.'s report to Davis and Johnson about Volk's abuse of O.B. did not occur until fall 1969, after G.B. had graduated.

The suggestion that the abuse continued into 1970 because G.B. thought he remembered it was Eric Clapton who sang the song "After Midnight" is purely speculative.  While Clapton's version of the song was not released until October 1970, the original version of "After Midnight" was

---

[2]  For example, in *Roe*, first graders were routinely absent from their classrooms for long periods of time and observed sitting on the janitor's lap and accompanying him to empty restrooms.  (*Roe, supra,* 85 Cal.App.5th at p. 29.)

released in 1966.  As the trial court pointed out, G.B.'s own specific testimony was that the abuse stopped in the fall of 1968, during his ninth grade year.  G.B. graduated in spring of 1969, and had only limited interactions with Volk after graduation.  G.B.'s comment that "I think it was Eric Clapton who sung the song" is not sufficient on its own to support an inference that the abuse continued into October 1970.

G.B. correctly points out that the trial court failed to discuss O.B.'s report to Vice-Principal Williams.  He argues that he is entitled to the "reasonable inference" that this report occurred in 1968, before Volk stopped abusing him.  But this is not an inference, it is speculation.  And it is speculation that conflicts with facts G.B. has conceded.

In its separate statement of material facts, the District asserted that the first time anyone told a District staff member about Volk's abusive behavior was when O.B. made his report to Davis and Johnson.  In his separate statement, G.B. listed that fact as "undisputed."  Therefore, O.B.'s report to Williams must have come later.  But, as noted above and conceded by G.B. in his opening brief on appeal, the report to Davis and Johnson could not have occurred until fall 1969, because that is when Johnson began working at Carver.  Therefore, by G.B.'s own admission, the report to Williams must have occurred no earlier than fall 1969, after Volk's abuse of G.B. had ceased.

Further, the evidence itself gives no indication of when O.B. made the report to Williams.  The evidence submitted by G.B. about the report consists solely of two answers given at O.B.'s deposition:

"Q:  Okay.  Other than Mr. Davis and Mr. Johnson, did you tell anybody else?  Just to close out that issue.

6

"A: There is a Mr. Williams that's a part of the administration. I put his name down. I believe, if I recall, I did tell him. Mr. Williams were something in the main office, I recall.

"Q: Was he African American?

"A: Yeah."

These two answers offer no information from which a court or jury could infer when that report was made to Williams. And G.B. does not explain how this evidence could be combined with any other evidence to reach a reasoned conclusion on that point. His suggestion that the report occurred in 1968 is merely conjecture.[3]

As noted, summary judgments are resolved with an eye toward trial. (*Aguilar, supra,* 25 Cal.4th at pp. 851, 855.) If the evidence submitted would entitle a defendant to judgment as a matter of law at a trial, it entitles them to summary judgment. (*Ibid.*) That is the case here. There is no evidence to show the District had notice of Volk's behavior prior to any abuse of G.B. All we know about the report to Williams is that it happened. G.B.'s speculation about when it happened is not evidence. (*Stokes v. Forty Niners Stadium Management Co., LLC* (2024) 107 Cal.App.5th 1199, 1214.) All non-speculative evidence suggests that Volk's behavior was first noticed by staff after G.B. graduated. In the absence of notice, G.B. cannot establish liability, and summary judgment was properly granted. (*Hart, supra,* 53 Cal.4th at p.

---

[3] G.B.'s argument that the District had constructive notice because Volk "openly and notoriously" removed boys from campus fails for similar reasons. (See *Doe v. Lawndale Elementary School Dist.* (2021) 72 Cal.App.5th 113, 142–143 ["open" behavior does not establish notice to the district unless actually witnessed by staff].) The first known staff member who saw this was Johnson, who started employment after G.B. had already graduated. The court cannot infer, as G.B. asks, that if Johnson saw and reported it, unnamed others must have seen and reported it first.

870.)  Because we conclude no triable issue exists on notice, we need not discuss the application of Education Code section 44808.

## DISPOSITION

The judgment of the trial court is affirmed.  The parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, P. J.

WE CONCUR:


TAMZARIAN, J.


COGLIATI, J.*

---

*Judge of the Santa Cruz Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.