Filed 3/23/21  S.P. v. Santa Ana Unified School Dist. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| S.P., | |
| Plaintiff and Appellant, | G057669 |
| v. | (Super. Ct. No. 30-2017-00909206) |
| SANTA ANA UNIFIED SCHOOL DISTRICT et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Melissa R. McCormick, Judge.  Affirmed.

Law Offices of Nicholas A. Siciliano, Nicholas A. Siciliano; The James Law Group, Todd A. James; Esner, Chang & Boyer and Holly N. Boyer for Plaintiff and Appellant.

Declues Burkett & Thompson, Jeffrey A. Smith and Steven J. Lowery for Defendants and Respondents.

\*          \*          \*

## INTRODUCTION

Plaintiff S.P., a minor, appeals from the judgment entered after the trial court granted summary judgment against her on the negligence claims she asserted against her teacher (Jeanette McMahon), the principal of her high school (Cindy Landsiedel), and the Santa Ana Unified School District (SAUSD).[1] The undisputed facts show that on several occasions during the Spring semester of 2016, after plaintiff's mother dropped her off at her high school to attend a zero period show choir class, plaintiff did not go to class but walked through and off campus to meet 24-year-old Carlos Davila. On those occasions, Davila drove plaintiff to a park, where they would engage in sexual intercourse, and then returned plaintiff to campus in time for her first period class. Plaintiff claims defendants failed to supervise her and, in particular, McMahon failed to take attendance accurately and on a daily basis during show choir class.

The trial court granted summary judgment on the ground the negligent conduct at issue was not sufficiently likely to result in the kind of harm experienced by plaintiff such that liability for Davila's sexual abuse of plaintiff may be appropriately imposed on defendants.

We affirm. We agree with the trial court that plaintiff's negligence claims fail because plaintiff's injuries, as a matter of law, were neither a reasonably foreseeable consequence of, nor sufficiently connected to, defendants' failure to supervise.

## FACTS[2]

In 2016, during the second semester of plaintiff's tenth grade year, plaintiff was a student in the show choir class taught by McMahon during zero period at a high

---

[1] We refer to McMahon, Landsiedel, and SAUSD collectively as defendants.

[2] This section summarizes evidence referenced in the parties' separate statements.

school within SAUSD. A few elective classes, including show choir, were held during zero period which began at 7:00 a.m. and ended at 7:50 a.m. Although most students did not have a zero period class, many students arrived on campus before the first period of the day, which began at 8:00 a.m., for various reasons such as meeting with teachers, eating breakfast that was served at school during that time, or attending athletic team practices.

Plaintiff did not attend show choir class 10 to 20 times that semester. She was absent five times to attend tutoring sessions; she missed the remaining class meetings to meet with Davila. On the mornings she met Davila, after plaintiff was dropped off at school by M.D.A. (plaintiff's mother) when show choir class started, plaintiff would send a text message to Davila that she was on her way to meet him. Plaintiff would enter campus and walk all the way across campus to be met by Davila at a pickup and drop off zone near a parking garage at the rear of the campus. On those occasions, Davila would take plaintiff to a park where they would engage in sexual intercourse. At plaintiff's request, Davila would return plaintiff to campus before her first period class began at 8:00 a.m. If she arrived back to school before the zero period ended, she would not go to the show choir class because McMahon would ask her why she was late to class.[3]

Plaintiff testified at her deposition that she chose to skip show choir class (as opposed to other classes) to meet with Davila because she believed McMahon did not take attendance each day but only on Friday for the entire week. Plaintiff was not marked absent on the days she skipped show choir class to meet Davila. Students who miss zero period class (and are marked absent) are generally required to go to the attendance office prior to the next class and provide justification for the absence.

[3] Evidence was presented that in Spring 2016, plaintiff's high school was a closed campus, meaning students could not leave without permission once dropped off. Defendants, however, disputed whether the campus was closed before the beginning of first period at 8:00 a.m. Whether the school was closed during zero period is immaterial because we assume for purposes of our analysis *post* that there was a failure to supervise.

3

Davila ended the relationship with plaintiff in May 2016. In July 2016, M.D.A. discovered plaintiff's relationship with Davila after reviewing text messages between plaintiff and Davila on plaintiff's cell phone. M.D.A. had not been informed that plaintiff had left campus during the zero period.

PROCEDURAL HISTORY

Plaintiff's fourth amended complaint asserted three negligence claims against McMahon and/or Landsiedel (collectively referred to as the individual defendants).[4] First, plaintiff alleged negligence against the individual defendants on the ground they had a duty to supervise plaintiff during school hours and while she was on school premises and they knew or should have known that, by breaching that duty, they unreasonably increased the risk that plaintiff might suffer harm outside of the campus, including enabling Davila to have unlawful sexual intercourse with plaintiff during zero period.

Second, plaintiff alleged negligent infliction of emotional distress against the individual defendants on the ground they negligently caused plaintiff emotional distress by failing to supervise her, which enabled Davila to have unlawful sexual intercourse with her. Third, plaintiff asserted a negligent hiring, training, and supervision claim against Landsiedel which alleged she had a duty to investigate, hire, train, and supervise teachers at the school and that she breached this duty with respect to McMahon, thereby enabling Davila to have sexual intercourse with plaintiff during zero period.

---

[4] Plaintiff's mother, M.D.A., was also an individual plaintiff named in the fourth amended complaint. In January 2019, M.D.A. dismissed all her claims against defendants and is not a party on appeal.

Plaintiff also alleged in the fourth amended complaint claims against SAUSD for vicarious liability for the conduct of others as to each of the three negligence claims asserted against McMahon and/or Landsiedel.

Finally, the fourth amended complaint contained a defamation claim against the individual defendants and a vicarious liability claim against SAUSD for the individual defendants' alleged defamation.

Defendants filed a motion for summary judgment arguing there was no triable issue of material fact regarding plaintiff's negligence and defamation claims. Plaintiff filed an opposition.

The trial court granted the motion for summary judgment, and judgment was entered in favor of defendants. The trial court explained its ruling in its minute order: "The existence of a duty of care of a school district toward a student depends, in part, on whether the particular harm to the student is reasonably foreseeable. [Citation.] Foreseeability is determined in light of all the circumstances and does not require prior identical events or injuries. [Citations.] 'It is not necessary to prove that the very injury which occurred must have been foreseeable by the school authorities. . . . Their negligence is established if a reasonably prudent person would foresee that injuries of the same general type would be likely to happen in the absence of [adequate] safeguards.' [Citation.] The California Supreme Court has recognized that in some cases 'the intervening conduct of the other student is so bizarre or unpredictable as to warrant a limitation of liability through the expedience of concluding, as a matter of law, that a negligent failure to supervise was not the proximate cause of the injury.' [Citation.]

"This case is such a case. Here, Plaintiff's mother dropped Plaintiff off at school, Plaintiff walked through campus, skipped zero period, and was picked up by Davila, a non-student, at a location Plaintiff and Davila prearranged by text message. . . . Plaintiff also met Davila after school, . . . events for which Plaintiff does not allege Defendants are responsible. Plaintiff's comparison of the undisputed facts here

5

and those in cases where students were harmed by students or teachers on school grounds or were injured by the negligent conduct of third parties after leaving school grounds is not persuasive. In analyzing duty, the court's task is not to decide whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue 'is sufficiently likely to result in' the kind of harm experienced that liability may appropriately be imposed on the negligent party. [Citation.] Plaintiff cites no authority standing for the proposition that a breach of an alleged duty to supervise 'is sufficiently likely to result in' a student leaving campus to engage in sexual activity that liability may appropriately be imposed on a teacher, a principal and a school district. See *Thompson v. Sacramento City Unified Sch. Dist.* (2003) 107 Cal.App.4th 1352, 1372 ('Short of a prison-like lockdown situation, students who, for their own purposes, deliberately intend to escape the direct scrutiny of supervisory personnel will inevitably find a way to do so.'). Plaintiff therefore cannot establish her three negligence-based claims."

Plaintiff appealed.[5]

## DISCUSSION

### I.

#### STANDARD OF REVIEW

"'On review of an order granting or denying summary judgment, we examine the facts presented to the trial court and determine their effect as a matter of law.' [Citation.] We review the entire record, 'considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.' [Citation.] Evidence presented in opposition to summary judgment is

---

[5] The trial court also decided the defamation claims against plaintiff. In her opening brief, plaintiff states that she does not challenge the judgment as to the resolution of her defamation claims.

liberally construed, with any doubts about the evidence resolved in favor of the party opposing the motion.  [Citation.]  [¶] Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.'  [Citation.]  A defendant seeking summary judgment must show that the plaintiff cannot establish at least one element of the cause of action."  (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618 (*Regents*).)

## II.

### GOVERNING LEGAL PRINCIPLES

To establish her negligence claims, plaintiff had to prove duty, breach, causation, and damages.  (*Regents, supra*, 4 Cal.5th at p. 618.)  "The existence of a duty of care is a question of law decided on a case-by-case basis."  (*M. W. v. Panama Buena Vista Union School Dist.* (2003) 110 Cal.App.4th 508, 516.)  "'"While it is the province of the jury, as trier of fact, to determine whether an unreasonable risk of harm was foreseeable under the particular facts of a given case, the court must still decide as a matter of law whether there was a duty in the first place, *even if that determination includes a consideration of foreseeability*."'"  (*Ibid.*, italics added.)  Therefore "'[d]uty, being a question of law, is particularly amenable to resolution by summary judgment.'"  (*Regents, supra*, at p. 618.)

Each person has a general duty to exercise "'reasonable care for the safety of others'" (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1142), which does not include the duty to control the conduct of third parties (*Regents, supra*, 4 Cal.5th at p. 627).  "The 'special relationship doctrine' is an exception to this general rule."  (*Ibid.*)  A school district has a special relationship with students "arising from the mandatory character of school attendance and the comprehensive control over students exercised by school personnel, 'analogous in many ways to the relationship between parents and their children.'"  (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861,

7

869.)[6] As a result of this special relationship, schools have "the duty to use reasonable measures to protect students from *foreseeable injury* at the hands of third parties acting negligently or intentionally." (*Id.* at p. 870, italics added.)

In *C.A. v. William S. Hart Union High School Dist., supra*, 53 Cal.4th at page 870, the California Supreme Court stated the special relationship doctrine in the school setting "has been applied in cases of employees' alleged negligence resulting in injury to a student by another student [citations], injury to a student by a nonstudent [citation], and . . . injuries to a student resulting from a teacher's sexual assault [citation]." In each of the cases cited by the Supreme Court, the injury to the student was inflicted on school grounds. (See *J.H. v. Los Angeles Unified School Dist.* (2010) 183 Cal.App.4th 123, 127 [student was physically and sexually assaulted by other students on a school campus]; *M. W. v. Panama Buena Vista Union School Dist., supra*, 110 Cal.App.4th at p. 514 [student sexually assaulted another student in school bathroom]; *Leger v. Stockton Unified School Dist.* (1988) 202 Cal.App.3d 1448, 1453 [student attacked by nonstudent in school restroom]; *Virginia G. v. ABC Unified School Dist.* (1993) 15 Cal.App.4th 1848, 1851 [student sexually harassed and sexually assaulted by teacher whose prior employment had been terminated for sexual misconduct against young female students].)

In *C.A. v. William S. Hart Union High School Dist., supra*, 53 Cal.4th at page 865, the Supreme Court held that the plaintiff's theory of vicarious liability against a school district for negligent hiring, retention, and supervision was legally viable as "school personnel owe students under their supervision a protective duty of ordinary care,

---

[6] The California Constitution "'declare[s] that the right to public safety extends to public and private primary, elementary, junior high, and senior high school . . . where students and staff have the right to be safe and secure in their persons.' [Citation.] . . . Even assuming the constitutional provision is not self-executing [citation], it clearly expresses a 'fundamental public policy favoring measures to ensure the safety of California's public school students.'" (*Regents, supra*, 4 Cal.5th at p. 628.)

for breach of which the school district may be held vicariously liable." The court concluded: "If a supervisory or administrative employee of the school district is proven to have breached that duty by negligently exposing plaintiff to a foreseeable danger of molestation by his guidance counselor, resulting in his injuries, and assuming no immunity provision applies, liability falls on the school district under [Government Code] section 815.2." (*Id.* at pp. 865-866.)

In *Regents, supra*, 4 Cal.5th 607, the Supreme Court addressed whether a university is liable in negligence for breach of the duty to protect students after a troubled student stabbed another student in a chemistry lab. The Supreme Court considered the legal principles relevant to determining whether a duty exists and, if that duty exists, how far it extends: "The court may depart from the general rule of duty . . . if other policy considerations clearly require an exception. [Citations.] We have identified several factors that may, on balance, justify excusing or limiting a defendant's duty of care. These include: 'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' (*Rowland v. Christian* (1968) 69 Cal.2d 108, 113 (*Rowland*).) These factors must be 'evaluated at a relatively broad level of factual generality.' [Citation] In considering them, we determine 'not whether they support an exception to the general duty of reasonable care on the facts of the particular case before us, but whether carving out an entire category of cases from that general duty rule is justified by clear considerations of policy.' [Citation.] In other words, the duty analysis is categorical, not case specific." (*Id.* at pp. 628-629.)

9

The Supreme Court continued: "The *Rowland* factors fall into two categories. The first group involves foreseeability and the related concepts of certainty and the connection between plaintiff and defendant. The second embraces the public policy concerns of moral blame, preventing future harm, burden, and insurance availability. The policy analysis evaluates whether certain kinds of plaintiffs or injuries should be excluded from relief. [Citation.] We conclude that violence against students *in the classroom or during curricular activities*, while rare, is a foreseeable occurrence, and considerations of public policy do not justify categorically barring an injured student's claims against the university." (*Regents, supra*, 4 Cal.5th at p. 629, italics added.)

III.

PLAINTIFF'S NEGLIGENCE CLAIMS FAIL BECAUSE HER INJURIES WERE NEITHER A REASONABLY FORESEEABLE CONSEQUENCE OF, NOR SUFFICIENTLY CONNECTED TO, DEFENDANTS' FAILURE TO SUPERVISE HER.

Here, all of plaintiff's negligence claims are based on the allegation that defendants breached their duty to supervise her during zero period. As the trial court concluded, it was not sufficiently likely the category of negligent conduct at issue in this case, the defendants' failure to supervise, would result in the kind of harm plaintiff experienced after she left campus to meet Davila and had sexual intercourse with him. In other words, as a matter of law, her injury was not a reasonably foreseeable consequence of, nor sufficiently connected to, defendants' omissions in supervision to impose liability on defendants for that harm.

In *Regents, supra*, 4 Cal.5th at page 629, the Supreme Court explained: "'The most important factor to consider in determining whether to create an exception to the general duty to exercise ordinary care . . . is whether the injury in question was foreseeable.' [Citations.] In examining foreseeability, 'the court's task . . . "is not to decide whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more generally whether the

10

category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed . . . .'" [Citations]. [¶] Phrased at the appropriate level of generality, then, the question there is not whether UCLA could predict that Damon Thompson would stab Katherine Rosen in the chemistry lab. It is whether a reasonable university could foresee that its negligent failure to control a potentially violent student, or to warn students who were foreseeable targets of his ire, could result in harm to one of those students." (Italics omitted.)

Here, a reasonable teacher or principal would not foresee that the failure to supervise a minor student during zero period could result in that student leaving the school campus to have sex with a man who had no connection to the school.

We do not need to address the second of the *Rowland* factors as we can presume it is certain that plaintiff, a minor, was injured as a result of having sexual intercourse with 24-year-old Davila.

"The third factor is 'the closeness of the connection between the defendant's conduct and the injury suffered.' [Citation.] 'Generally speaking, where the injury suffered is connected only distantly and indirectly to the defendant's negligent act, the risk of that type of injury from the category of negligent conduct at issue is likely to be deemed unforeseeable. Conversely, a closely connected type of injury is likely to be deemed foreseeable.'" (*Regents, supra*, 4 Cal.5th at pp. 630-631, italics omitted.)

Applying the third factor to the facts of the case before it, the Supreme Court concluded: "The negligence alleged here is the failure to prevent a classroom assault, either by controlling the perpetrator or warning the potential victim. Although the immediate cause of injury in such cases will be the perpetrator's violent outburst, we have explained that the existence of an intervening act does not necessarily attenuate a defendant's negligence. Rather, 'the touchstone of the analysis is the foreseeability of that intervening conduct.' [Citation.] When circumstances put a school on notice that a student is at risk to commit violence against other students, the school's failure to take

11

appropriate steps to warn or protect foreseeable victims can be causally connected to injuries the victims suffer as a result of that violence. Although a criminal act is always shocking to some degree, it is not completely unpredictable if a defendant is aware of the risk." (*Regents, supra*, 4 Cal.5th at p. 631.)

Here, there is nothing in the record to suggest, and plaintiff does not contend, defendants were on notice of plaintiff's relationship with Davila or her plans to meet him off campus to have sex instead of attending show choir class. Plaintiff's injuries incurred as a result of such conduct are not closely connected to McMahon's failure to take attendance daily and accurately or defendants' general failure to supervise plaintiff.

As the *Rowland* foreseeability factors do not weigh in favor of recognizing or extending a duty of care here, we do not need to consider the policy factors. (See *Regents, supra*, 4 Cal.5th at p. 631 ["Although *Rowland*'s foreseeability factors weigh in favor of recognizing a duty of care, we must also consider whether public policy requires a different result."].)

As also pointed out by the trial court, plaintiff has failed to cite any legal authority, and we have found none, in which negligence liability was imposed upon school personnel or a school district for sexual abuse caused by a third party off school premises.

In her opening brief, plaintiff cites *Hoyem v. Manhattan Beach City School Dist.* (1978) 22 Cal.3d 508 for the proposition that "a school district may be liable for negligent supervision where, as a result of negligent supervision on campus, a student suffered an injury off campus." In that case, a 10-year-old boy left school premises before the end of scheduled classes and was struck by a motorcycle at a public intersection. (*Id.* at p. 512.) The Supreme Court concluded that if plaintiffs were able to prove the student's injury was proximately caused by the school district's negligent supervision, the district could be held liable for damages. (*Ibid.*)

12

We do not disagree that a school district and/or school personnel may be held liable in negligence for injuries to a student that ultimately occur off campus. In *Hoyem v. Manhattan Beach City School Dist., supra*, 22 Cal.3d at page 520, however, it was not unforeseeable as a matter of law that the failure to supervise a 10-year-old student could result in the student leaving campus and being struck by a motor vehicle. Here, plaintiff's injury—caused by her having engaged in sexual intercourse with an adult male after leaving campus to meet him—was too attenuated to defendants' conduct to impose liability for negligence upon defendants.

The trial court correctly granted defendants' motion for summary judgment.


## DISPOSITION

The judgment is affirmed. Respondents shall recover costs on appeal.


FYBEL, J.

WE CONCUR:


MOORE, ACTING P. J.


IKOLA, J.


13