Filed 6/28/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| C. ACHAY, | |
| Plaintiff and Appellant, | G060053 |
| v. | (Super. Ct. No. 30-2018-01020399) |
| HUNTINGTON BEACH UNION HIGH SCHOOL DISTRICT, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Richard Y. Lee, Judge. Reversed.

Bear Republic Law, Stanton T. Mathews; Hunt & Adams, Inc., and John C. Adams III for Plaintiff and Appellant.

Declues Burkett & Thompson, Cary K. Quan and Steven J. Lowery for Defendant and Respondent.

\* \* \*

Schools have a "special relationship" with their students; therefore, schools are required to "use reasonable measures to protect students from foreseeable injury at the hands of third parties acting negligently or intentionally." (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 869-870 (*C.A.*).)

Plaintiff C. Achay was a student on a high school track team, which usually practiced after school until 5:30 p.m. One day practice ended early, so Achay and her friend walked to Starbucks and returned about 45 minutes later. On the way back to the open campus, they encountered a stranger who Achay thought was "suspicious." Someone identified him as A. Meer, a former student who was "kind of weird."

Achay retrieved her schoolbooks from the girls' locker room, which was to be locked at 6:00 p.m. While Achay was walking from the girls' locker room to the school parking lot she was stabbed by Meer. She suffered serious injuries.

Achay sued defendant Huntington Beach Union High School District (the District) for negligence. The District moved for summary judgment on the grounds of duty and causation. The trial court granted the motion. Achay appeals.

The trial court found the District owed Achay no duty of care because at the time of the stabbing, she "was no longer on campus during school hours during a school-related activity." We disagree. At the time of the stabbing, Achay was on campus to retrieve her books from an open locker room after her track practice and another sports team was still practicing nearby. Achay's brief departure from school is a red herring.

Alternatively, the trial court stated it "cannot assume that more security would have prevented the incident from occurring." But this is plainly a triable issue of material fact: whether the District used reasonable security measures to protect Achay from an arguably preventable injury at the hands of Meer. (See *C.A., supra,* 53 Cal.4th at pp. 869-870.) We leave such causation issues to the trier of fact.

Thus, we reverse the trial court's order, which granted the District's motion for summary judgment.

I

FACTS AND PROCEDURAL BACKGROUND

Achay was a 10th grader at Edison High School.  Achay's last class ended at 2:30 p.m.  Achay would then go to the girls' locker room where she changed for track practice, which normally started at 3:00 p.m. and ended at 5:30 p.m.  There were about a hundred students who participated in the track and field team.  After practice, Achay was usually picked up in the school's parking lot by the mother of her close friend, L. Sotelo.

On Friday, March 29, 2018, the team had a lighter "recovery day" due to a prior track meet, so track practice ended early, at about 4:30 p.m.  Achay and Sotelo walked to a nearby Starbucks, which was about 15 minutes away.  Achay and Sotelo were at the Starbucks for about 15 minutes, then they left at about 5:00 p.m.  Prior to being picked up by Sotelo's mother, Achay needed to get her books from the girls' locker room, which was regularly locked by the school janitor at around 6:00 p.m.

While Achay and Sotelo were walking back to campus, they encountered a stranger on the street, later identified as Meer, who was on rollerblades.  Achay found Meer to be suspicious because of his dark clothing, and because he made eye contact with Achay, but did not say anything.  As Achay and Sotelo walked back to campus, they moved closer to the school fence and away from Meer, who was taunting them.

Sotelo called a mutual friend at the high school, D. Rios.  Sotelo told Rios there was a "strange guy" near them and asked her to stay on the phone until Achay and Sotelo returned to campus.  When they returned to school at about 5:15 p.m., they met up with Rios, who was in the parking lot.  Meer was now also in the parking lot.

Achay and her two friends walked toward G. Pace, "just to be near someone."  Pace was a student who was waiting for a ride home after his lacrosse practice.  Pace informed Achay that Meer used to be an Edison student, he now attended another high school, and he "is kind of weird."  After Pace was picked up from the parking lot, Achay noticed Meer was still there, talking to other students.

3

Achay, Sotelo, and Rios walked to the girls' locker room at about 5:30 p.m. The locker room was unlocked; no other students or adults were present. Achay retrieved her books, and the group then went to the "varsity locker room" within the girls' locker room, because they were able to lock the door. Achay said they locked the door because "we didn't feel safe." Sotelo called her mother to pick them up (Sotelo does not remember if she told her mother anything about Meer).

Achay, Sotelo, and Rios eventually left the girls' locker room to go to the school's parking lot, where Sotelo's mother was to pick them up. The group walked by the swimming pool, where practice was still taking place. After passing the pool, Sotelo noticed Meer was rollerblading behind Achay and told her to "watch out." Achay looked behind her, noticed Meer, then looked forward. Within seconds, Meer passed by Achay at a fast speed, struck Achay in the buttocks area, and kept going.

Achay felt like she had been hit "really hard." Achay initially "stood there in shock" and "laughed it off." But after she dropped her binder, Achay realized "this actually hurts." Achay reached down, felt something wet, and noticed there was blood on her hand. Sotelo called 911. The group then went to the swimming pool, where Achay told the swimming coach she had been stabbed.[1]

Paramedics quickly arrived on the campus, and an ambulance transported Achay to the hospital. Achay's colon had been pierced, which required two surgeries. Achay was eventually forced to wear a colostomy bag.

*Court Proceedings*

Achay sued the District for negligence and premises liability (the premises claim was later dropped). Achay alleged the District owed her "a duty to properly hire,

---

[1] Achay alleges a prior incident where Meer accosted another student on campus and claims the District was aware of this. Achay cites nothing in the record to support this claim, nor were we able to find anything, so it forms no part of our analysis.

train and supervise employees that provide security . . . ." Achay further alleged the District was aware of, or "should have been aware of, the foreseeability of individuals coming onto the Edison High School grounds to cause emotional harm . . . or cause physical harm by striking persons . . . ." Achay further alleged the District "breached its duty when it . . . failed to provide adequate security . . . when . . . Meer . . . assaulted and battered [Achay], resulting in damages, including emotional and physical harm . . . as alleged herein."

Additional evidence was developed during discovery. The school day was normally from 7:00 a.m. to 2:30 p.m. However, campus supervisors were on duty from 7:00 a.m. to 4:00 p.m. The campus was closed during regular school hours (meaning the students could not leave without permission), but after 2:30 p.m., the school was open to the public and became like a public park. The campus was closed to the public at about 10:00 p.m. During the month of March, students engaged in several after school sports (e.g., track and field, swimming, lacrosse, volleyball, softball, baseball). During sports activities, students were usually supervised by a coach, but after practice there was no more supervision. In the three years prior to the stabbing, there were about 30 student safety incidents on campus, but none after 2:30 p.m.

The District filed a motion for summary judgment, arguing it owed Achay no duty of care at the time of the stabbing. Alternatively, the District argued there was no basis for a reasonable juror "to find a causal connection between the [alleged] negligence and the injury which occurred swiftly and unpredictably." Achay filed an opposition to the motion. Achay attached a declaration from an expert in school administration and social work. The District objected to the declaration on various evidentiary grounds.

The trial court granted the District's motion for summary judgment but overruled its evidentiary objections. Achay later filed a motion for new trial (essentially a petition for rehearing), which was denied. Achay then filed this appeal.

II

DISCUSSION

Summary judgment "provide[s] courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 844.) The moving party bears the initial burden to make a prima facie showing that no triable issue of material fact exists. If this burden is met, the party opposing the motion bears the burden of showing the existence of disputed facts. (*Id.* at p. 843.)[2]

We review the trial court's decision de novo. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65, 67-68.) "In determining if the papers show that there is no triable issue as to any material fact, the court shall consider all of the evidence set forth in the papers . . . and all inferences reasonably deducible from the evidence, . . . summary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence if contradicted by other inferences or evidence that raise a triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c).)

The elements of a negligence cause of action are duty, breach, causation, and damages. (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673-674.) It is well established that "the existence and scope of a duty are questions of law, while breach, causation, and injury are fact-specific issues for the trier of fact." (*Staats v. Vintner's Golf Club, LLC* (2018) 25 Cal.App.5th 826, 837.)

The District contends: A) it owed Achay no legal duty of care at the time of the stabbing; and B) even if there was a duty, there was no evidence of a causal connection between the alleged breach (lack of security) and the stabbing. We shall discuss each contention separately, applying the law to the facts.

---

[2] In the opening brief, Achay cites an older opinion that does not accurately convey the current state of the law regarding summary judgment motions. (*Residents of Beverly Glen Inc. v. City of Los Angeles* (1973) 34 Cal.App.3d 117, 127.)

6

*A. Duty of Care*

"'As a general rule, one owes no duty to control the conduct of another, nor to warn those endangered by such conduct. Such a duty may arise, however, if "(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives the other a right to protection."'" (*Leger v. Stockton Unified School Dist.* (1988) 202 Cal.App.3d 1448, 1458 (*Leger*).)

"The existence of a duty is not an immutable fact of nature, but rather an expression of policy considerations providing legal protection. [Citation.] Thus, the existence and scope of a defendant's duty is a question for the court's resolution." (*Kim v. County of Monterey* (2019) 43 Cal.App.5th 312, 324.)

"A special relationship is formed between a school district and its students resulting in the imposition of an affirmative duty on the school district to take all reasonable steps to protect its students." (*M. W. v. Panama Buena Vista Union School Dist.* (2003) 110 Cal.App.4th 508, 517 (*M.W.*).) "Ample case authority establishes that school personnel owe students under their supervision *a protective duty of ordinary care*, for breach of which the school district may be held vicariously liable." (*C.A., supra*, 53 Cal.4th at pp. 865-866, italics added.)

While "neither school districts nor their employees are the insurers of the safety of their students," school districts "do owe [students] a duty to use the degree of care which a person of ordinary prudence, charged with comparable duties, would exercise in the same circumstances." (*Leger, supra*, 202 Cal.App.3d at 1459.) A school district's responsibility "includes the duty to use reasonable measures to protect students from foreseeable injury at the hands of third parties acting negligently or intentionally." (*C.A., supra*, 53 Cal.4th at pp. 870-871.)

"Foreseeability is determined in light of all the circumstances and does not require prior identical events or injuries." (*M.W., supra*, 110 Cal.App.4th at pp. 518-

7

519.)  "'It is not necessary to prove that the very injury which occurred must have been foreseeable by the school authorities . . . .  Their negligence is established if a reasonably prudent person would foresee that injuries of the same general type would be likely to happen in the absence of [adequate] safeguards.'"  (*Ibid*.)  Additionally, "'the issue of "foreseeability" does not depend upon the foreseeability of a particular third party's act, but instead focuses on whether the allegedly negligent conduct at issue created a foreseeable risk of a *particular kind of harm*.'"  (*Ibid*.)

Schools have a "general duty to supervise the conduct of children on school grounds during school sessions, *school activities*, recesses, and lunch periods."  (*Bartell v. Palos Verdes Peninsula School Dist.* (1978) 83 Cal.App.3d 492, 498-499 (*Bartell*), italics added.)  "[T]he duty of supervision is limited to *school-related or encouraged functions* and to activities taking place during school hours."  (*Ibid*., italics added.)

Here, Achay was on her high school campus after regular school hours to attend her track practice.  Achay was to be picked up after practice in the school's parking lot.  After practice, Achay left campus for about 45 minutes, then returned to school to retrieve her books from the girls' locker room, which was still open.  Achay was then walking from the girls' locker room to the parking lot when Meer stabbed her.  At the time of the stabbing, the swim team was still conducting its practice nearby.

In short, we hold the District owed Achay a duty of care because she was stabbed while she was on campus during "school-related or encouraged functions" (after school sports).  (See *Bartell, supra,* 83 Cal.App.3d at pp. 498-499.)  Thus, under a de novo standard of review, we overrule the contrary finding of the trial court.

The District concedes that if Achay had been "stabbed in her chemistry class" the District would <u>not</u> be entitled to "summary judgment on the basis of duty." (See *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607 [school owed duty of care to student who was stabbed during a chemistry class].)

Accordingly, the District's argument regarding its duty of care largely rests

8

on a question of timing. That is, relying primarily on two published opinions, the District argues that its duty to protect Achay ended when her track practice was over, and she left the campus for 45 minutes. (See *Guerrero v. South Bay Union School Dist.* (2003) 114 Cal.App.4th 264 (*Guerrero*); *Bartell, supra,* 83 Cal.App.3d 492.) We disagree.

In *Guerrero*, a six-year-old child was waiting to be picked up after school and walked across the street. (*Guerrero, supra*, 114 Cal.App.4th at pp. 266-267.) "A short while later, [the child] decided to return to the side of the street where the school is located. As [the child] was crossing the street, she was struck by a car . . . ." (*Id.* at p. 267.) The child (ad litem) sued the school district for negligence. (*Ibid.*) At issue was whether the district was "responsible for the child's injuries even though they occurred in an accident off school grounds and after school." (*Id.* at p. 269.) Agreeing with the trial court, the appellate court held the school district was not liable for the child's injuries because she was not on school property when the accident occurred. (*Id.* at pp. 269-270.) Further, the court held: "There is no evidence of any act, or failure to act, by school personnel while [the child] *was on school grounds* that could be described as negligent." (*Id.* at p. 271, italics added.)

Here, unlike the injured child in *Guerrero,* Achay's injuries occurred while she *was on school grounds*, somewhere between the locker room and the parking lot. And unlike the school district in *Guerrero*, in this case the District's alleged negligence (failure to provide adequate security) occurred while Achay *was on school grounds*.

The District argues Achay's "negligence claims are actually on a worse factual and legal footing than those at issue in *Guerrero*" because Achay "had left the campus after her track practice ended and returned later to be picked up." But the District's argument seemingly overlooks the dispositive fact that unlike *Guerrero*, Achay was injured *on school grounds*. Achay was stabbed while the campus was open to the public, and during ongoing after school sports activities. It simply makes no difference whatsoever that Achay briefly left the campus and returned before her ride arrived to pick

9

her up (regardless of her reasons), so this argument is a red herring.

Indeed, there was evidence Achay's track practice ended early on the day of the stabbing (about 4:30 p.m.), and the girls' locker room was routinely left open after track practice (until about 6:00 p.m.). Therefore, we find it reasonably foreseeable—if not predictable—that a student would leave campus for a brief respite after her practice ended early, return to an open locker room on campus to pick up her schoolbooks, and then walk to the school's parking lot to be picked up when the stabbing occurred (about 6:00 p.m.). (See *M.W., supra*, 110 Cal.App.4th at pp. 518-519 ["Foreseeability is determined in light of all the circumstances"].)

In *Bartell*, a 12-year-old boy entered an elementary school at about 5:30 p.m., either through an unlocked gate or a hole in a fence and died on the playground. (*Bartell*, *supra*, 83 Cal.App.3d at p. 496.) The child's parents sued the district, in part, for its alleged negligence in maintaining the gate and/or the fence. However, the parents presented no evidence the child "was a student at the school, or was on school grounds in connection with normal school attendance or in connection with a school function." (*Id.* at p. 499.) At issue was "whether a school district owes a general duty of supervision to all who frequent its premises for their own purposes." (*Ibid*.) Agreeing with the trial court, the appellate court held the school district had no duty "to supervise and control the conduct of persons on its premises apart from school-related activities and functions which require persons to be on school grounds." (*Id.* at p. 500.)

Here, unlike the child in *Bartell* who entered school premises without the school district's knowledge or permission (through a locked gate or a fence), Achay was an enrolled student who was on her school's campus to participate in school-related sports activities, presumably with the District's encouragement and support.

The District argues "that at the time of the assault, [Achay's] classes and her track practice had long been over." The District notes Achay "was released" from track practice "at 4:30 p.m., an hour and a half before her assault." However, Achay's

10

track practice normally ended at 5:30 p.m., and the girls' locker room was normally open until 6:00 p.m. Once again, we find it somewhat predicable that track and field students such as Achay would still be on campus to be picked up at 6:00 p.m., which was about 30 minutes after her track practice normally ended. And to reiterate, we hold that Achay's brief sojourn to Starbucks did not somehow relieve the District of its legal duty of care.

Finally, the District claimed at oral argument that the "financial burden" of providing security would be too onerous. But we emphasize that Achay was an enrolled student who returned to her campus for a legitimate school-related activity, which involved retrieving her schoolbooks from her locker in a still-open locker room. And but for her track practice ending early (another red herring), Achay would normally be on campus until 5:30 or 6:00 p.m. *Under the facts of this case*, the District had a continuing duty to use reasonable means to protect her safety.

We are certainly <u>not</u> finding that the District breached its duty (that is left to the trier of fact). Nor are we addressing other instances involving members of the public, with whom a school district generally has no special relationship, and therefore ordinarily owes no duty of care. (See *Guerrero*, *supra*, 114 Cal.App.4th at pp. 266-267.)

## B. Causation

"To establish causation, a plaintiff must prove that the defendant's conduct was a 'substantial factor' in bringing about his or her harm. [Citations.] Stated differently, evidence of causation 'must rise to the level of *a reasonable probability based upon competent testimony*. [Citations.] "A possible cause only becomes 'probable' when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action." [Citation.] The defendant's conduct is not the cause in fact of harm "'where the evidence indicates that there is less than a probability, i.e., a 50-50 possibility or a mere chance,'" that the harm would have ensued.'" (*Bowman v. Wyatt* (2010) 186 Cal.App.4th 286, 312.)

11

"In reviewing evidence of causation, 'we consider both direct and circumstantial evidence, and all reasonable inferences to be drawn from both kinds of evidence, giving full consideration to the negative and affirmative inferences to be drawn from all of the evidence, including that which has been produced by the defendant.'" (*Bowman v. Wyatt, supra*, 186 Cal.App.4th at p. 312.)

"'Whether a defendant's conduct actually caused an injury is a question of fact [citation] that is ordinarily for the jury.'" (*Raven H. v. Gamette* (2007) 157 Cal.App.4th 1017, 1029-1030.) "'"The fact of causation is incapable of mathematical proof, since no [person] can say with absolute certainty what would have occurred if the defendant had acted otherwise. If, as a matter of ordinary experience, a particular act or omission might be expected to produce a particular result, and if that result has in fact followed, the conclusion may be justified that the causal relation exists. In drawing that conclusion, the triers of fact are permitted to draw upon ordinary human experience as to the probabilities of the case."'" (*Ibid*.)

Here, while walking back to Edison High School from Starbucks, Achay and her friends first noticed Meer outside of the campus grounds. The group was fearful of Meer, who was taunting them. Achay described Meer as "suspicious." The group eventually locked themselves within the girls' locker room because they were frightened of Meer. Another student said Meer was not a student at Edison High School. Rather, Meer was a former student who was "kind of weird."

The school's policy allowed members of the public onto school grounds after 2:30 p.m., as if it were a public park, even though apparently hundreds of students were routinely still on campus participating in after school sports functions. Campus supervisors were on duty only until 4:00 p.m., but school facilities—such as the girls' locker room—were left open until 6:00 p.m. During after school sports activities, students were generally supervised by a coach, but after a team's practice there was no supervision. In the three years prior to the stabbing, there were about 30 student safety

12

incidents on campus, but fortuitously none had occurred after 2:30 p.m.

Given this evidence, we find there is a triable issue of material fact regarding whether the District used reasonable security measures to protect its students (such as Achay), from arguably preventable violence by third parties entering campus (such as Meer), during on-going after school sports functions. (See *C.A., supra,* 53 Cal.4th at pp. 869-870.) For instance, a trier of fact may question the reasonableness of having supervisors on campus only until 4:00 p.m., even though the public was allowed on campus beginning at 2:30 p.m., and many students involved in sports were still on campus, at least until about 6:00 p.m. Certainly, a trier of fact might recognize the potential volatility of a campus where there are scores or even hundreds of high school students interacting with whatever random members of the public happen to walk in.

The District argues "the last campus supervisors went off duty at 4:00 p.m., but even if they were working at the time of the incident there was no guarantee they would be present at the location of the incident at the time it occurred." The District also argues the stabbing "happened without warning and very quickly. It would only be speculation to assume that more security or more diligent security would have prevented the incident from occurring."

But these are plainly triable issues of material fact. Certainly, such factual questions would arise even if Achay had been stabbed during one of her high school classes. Further, the District's arguments in this regard seem to ignore the fact that Achay and her friends were fearful of Meer *prior to* the stabbing. Indeed, the girls were concerned enough to call a friend for help, and to enlist the aid of another student in the parking lot; therefore, it is hard to imagine that they wouldn't have searched out security personnel if they had been present on the campus. Moreover, given that Meer was not an Edison student, it is a reasonable inference that had campus supervisors been present they would have intervened or taken some precautionary measures to prevent the stabbing. (See *Bowman v. Wyatt, supra*, 186 Cal.App.4th at p. 312 ["In reviewing evidence of

13

causation, 'we consider both direct and circumstantial evidence, and all reasonable inferences to be drawn from both kinds of evidence'"].)

Finally, the District argues "this case involves a high school where students are more mature than elementary school students and, consequently, not as close supervision is required." But again, like the District's other numerous factual arguments, we leave such issues to the trier of fact. (See *Raven H. v. Gamette*, *supra*, 157 Cal.App.4th at pp. 1029-1030 ["'Whether a defendant's conduct actually caused an injury is a question of fact [citation] that is ordinarily for the jury'"].)


III

DISPOSITION

The trial court's order granting the District's summary judgment motion is reversed. The District is ordered to pay Achay's costs on appeal.



MOORE, J.


WE CONCUR:


BEDSWORTH, ACTING P. J.


MARKS, J.*


*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.